IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **TIMOTHY J. HARDY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **C.A. No. 2:24-cv-00029 EWH/RJK** |
| ) | |
| **CHESAPEAKE HOSPITAL AUTHORITY** ) | |
| **t/a CHESAPEAKE REGIONAL** ) | |
| **MEDICAL CENTER,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

This motion to dismiss is filed by the sole defendant, Chesapeake Hospital Authority, which, among other things, operates the Chesapeake Regional Medical Center, also known as Chesapeake Hospital ("CHA" or the "Authority"). The plaintiff is Timothy J. Hardy, a physician whose staff privileges to practice at the hospital were suspended in 2021. Dr. Hardy challenges his suspension in 2021 as lacking due process, and thus seeks to hold the Authority liable for violations of the Fifth and Fourteenth Amendments pursuant to 28 U.S.C. § 1983. The Authority's motion should be granted and this case dismissed.

**STANDARD OF REVIEW**

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The standards for deciding such motions are well-settled. "A motion to dismiss under Rule

---

[1] Although the Court of Appeals has been "unclear" as to whether an Eleventh Amendment dismissal is for failure to state a claim or for want of subject matter jurisdiction, *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2002), the majority of more recent cases treat the issue under Rule 12(b)(1), not as the absence of jurisdiction but as a constitutional limit on the exercise of jurisdiction. *See Riddick v. Watson*, 503 F. Supp. 3d 399, 412 n.8 (E.D. Va. 2020) (collecting

1

12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). The Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679; *see also Simmons v. United Mortg. & Loan Invest*., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

However, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (conclusory allegations not entitled to assumption of veracity); *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences."[2]

---

cases). The Authority has moved under both rules and the analytical difference is not material to this motion.

[2]    For example, in this case, the conclusory summary allegations of Paragraphs 25 and 28, that the Defendant acted in an extreme, arbitrary, outrageous manner, in conscious disregard of Dr. Hardy's rights, are such conclusory allegations.

On a motion to dismiss pursuant to Rule 12(b)(1), a defendant may attack subject-matter jurisdiction by contending that the complaint fails to sufficiently allege facts upon which the Court may make a finding of subject-matter jurisdiction, or may contend that the jurisdictional facts are untrue. *King v. Riverside Reg'l Med. Ctr.,* 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In both situations, the burden is on the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This motion, which does not contest any factual allegation of the Complaint – and is consistent with the Complaint's allegation that the Authority is a "public body" created by the Commonwealth of Virginia, Compl. ¶ 2 – is resolved by assuming any jurisdictional facts (but not conclusions of law) alleged in the Complaint are true. *King*, 211 F. Supp. 2d at 780. A claim of Eleventh Amendment immunity is a "facial attack" resolved in the same manner as a Rule 12(b)(6) motion. *Moore v. Gregory,* C.A. No. 3:23-cv-370, 2024 WL 1774819, at *4 (E.D. Va. Apr. 24, 2024) (Young, J.) (dismissing on Eleventh Amendment grounds claims against Sherriff in official capacity).

## **SUMMARY OF ARGUMENT**

There are four independent reasons why the motion should be granted:

1. As Dr. Hardy pleads, the Authority is "a public body created and existing under the laws of the Commonwealth of Virginia." Compl. ¶ 2. Created by the General Assembly by a special Act in 1966, revised thereafter, the Authority partakes of the sovereignty of the Commonwealth of Virginia. As an agency of the Commonwealth, it may not be sued in this Court consistent with the **11th Amendment to the Constitution** of the United States. As a corollary to its 11th Amendment immunity, although independently from it, **the Authority is not a "person" liable to suit** under Section 1983. This invokes a

3

constitutional limitation on the exercise of jurisdiction by this Court, counseling dismissal under Rule 12(b)(1).

2. The claim is **time-barred**. Section 1983 does not contain a statute of limitations. Courts are enjoined uniformly within a state to borrow the state statute of limitations for personal injury, and in this case the appropriate limitations period is two years. *Wilson v. Garcia*, 471 U.S. 261 (1985). The Complaint was filed March 28, 2024. The three notices Dr. Hardy received of his suspension – and his precautionary suspension itself – occurred in August 2021. The hearing of which he complains took place in October 2021, and upon Dr. Hardy's appeal the Authority's Governing Board upheld the hearing committee's decision in January 2022. The statute of limitations expired, at the very latest, on January 12, 2024, more than two months before the Complaint was filed. The Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

3. A Due Process claim begs the question of **what process was due**. Dr. Hardy's claim is a procedural Due Process claim. But as the Complaint itself notes, he was provided repeated notice of the charges against him, and ample time to defend. His suspension was imposed by the Medical Executive Committee ("MEC"). Compl. ¶¶ 6, 8. He was informed of, and exercised, his right to appeal to an Ad Hoc Committee. Compl. ¶¶ 9, 10. While he complains that this appellate review committee was "inherently biased" because they were Authority employees, such a standard would bar most if not all credentialing review procedures. The Ad Hoc Committee concluded the MEC acted reasonably in imposing the suspension. Nothing daunted, Dr. Hardy appealed again, this time to the Governing Board of the Authority. The Governing Board upheld the determination of the Ad Hoc Committee. Signally, the Complaint *does not plead a single infirmity*, much less one of

constitutional stature, made by the final, second-level Governing Board confirmation of the suspension. Dr. Hardy was provided with all that Due Process commands, and more.

4. Federal law provides **immunity from civil liability** for professional review bodies under these circumstances. 42 U.S.C. §§ 11101, *et seq.*, and the Complaint fails to allege any facts that would overcome the presumption of immunity. Dr. Hardy attempts to plead away immunity by asserting that the Authority's conduct was "extreme and outrageous and . . . arbitrary," Compl. ¶ 25, and that the Authority "evinced a conscious disregard of Hardy's rights," Compl. ¶ 28. Even if this were the statutory standard for avoiding immunity (it is not), these cursory allegations do not meet the *Iqbal/Twombly* standard of specificity. The Authority's motion should be granted and the Complaint should be dismissed.

## ARGUMENT

### I. THE ELEVENTH AMENDMENT PREVENTS THIS COURT FROM EXERCISING JURISDICTION OVER THIS COMPLAINT

#### A. As the Complaint Pleads, The Authority is a Public Body of the Commonwealth

The Complaint properly pleads that the Authority is a "public body created and existing under the laws of the Commonwealth of Virginia." Compl. ¶ 2. It is indeed. The Authority was created by a special Act of the General Assembly (not by or beholden to any city or county). The governing enabling act is appended as **Attachment A**. By this state-level law the General Assembly "created a public body politic and corporate to be known as the "Chesapeake Hospital Authority . . . with such public and corporate powers as are hereinafter set forth." Attachment A, Section 1. Section 3 expressly provides that "[t]he Authority *shall be deemed to be a public instrumentality*, exercising public and essential governmental functions to provide for the public health, welfare, convenience and prosperity of the residents of the City of Chesapeake and such other persons who might be served by the Authority." (Emphasis added.)

5

Among the attributes enjoyed by the Authority are:

(1) the entity was created as a body corporate and politic and as a political subdivision of the Commonwealth;

(2) the entity was created to serve a public purpose;

(3) the entity has the power to have a common seal, to sue and be sued, to enter into contracts, and to acquire, hold, and dispose of its revenue, and personal and real property;

(4) the entity possesses the power of eminent domain;

(5) the entity can borrow money and issues bonds that are tax-exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; and

(6) the management of the entity is vested in a board of directors or a commission.

Why are these six attributes important? These attributes, all enjoyed by the Authority, are the factors considered under Virginia law to determine whether an entity created by the General Assembly enjoys and shares in the sovereignty of the Commonwealth. *See Richmond v. Richmond Metro. Auth.*, 210 Va. 645, 647 (Va. 1970); *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 876 S.E.2d 917 (Va. 2022) (it is "not essential that an entity possess all of these attributes").[3]

---

[3] These attributes have led Virginia Circuit Courts, time and again, to hold that the Authority partakes of the sovereign immunity of the Commonwealth and accordingly has sovereign immunity from tort or tort-like claims, such as those in the Complaint. *See DuPuy-German v. Perwaiz*, CL20-2667 (Chesapeake Cir. Ct. Feb. 3, 2022) (**Attachment B**); *Fernandez-Becerra v. Perwaiz,* Case No. CL20-5901, (Chesapeake Cir. Ct. Oct. 7, 2021) (**Attachment C**); *James v. Chesapeake General Hosp.,* Law No. CL96-1259 (Chesapeake Cir. Ct. Mar. 25, 1998) (finding CRMC and a respiratory therapist employed by the hospital both were entitled to sovereign immunity) (**Attachment D**); *Brooks v. Jamali*, Law No. 19807-M (Chesapeake Cir. Ct. July 31, 1985) (**Attachment E**); *Jennings v. Chesapeake Gen. Hosp.*, Law No. 10676-M (Chesapeake Cir. Ct. June 4, 1985) (**Attachment F**); *Webster v. Chesapeake Gen. Hosp.,* Law No. 17733-H (Chesapeake Cir. Ct. Aug. 12, 1982) (**Attachment G**); *Hughes v. Lake Taylor City Hosp.*, 54 Va.

Addressing a North Carolina hospital authority that is similarly situated to the Chesapeake Authority, the Fourth Circuit explained, "Quasi-municipal corporations, such as the Hospital Authority, are commonly used . . . to perform ancillary functions in government more easily and perfectly by devoting to them, because of their character, special personnel, skill and care.… In such instances, for purposes of government and for the benefit and service of the public, the State delegates portions of its sovereignty, to be exercised within particular portions of its territory, or for certain well-defined public purposes." *Benitez v. Charlotte-Mecklenburg Hosp. Auth.,* 992 F.3d 229, 239 (4th Cir. 2021) (cleaned up).

### B. The Authority's Status Provides Immunity Under the 11th Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite its terms, the Supreme Court has held consistently that the Amendment renders "an unconsenting state . . . immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). *See Bd. of Trustees*

---

Cir. 239, 241 (Norfolk 2000) (noting that the Court in *Holloman v. Chesapeake Hospital Authority*, Record No. 840237, (Nov. 16, 1983) (**Attachment H)** held that the Authority was a governmental entity immune from suit); and more recently *Holdstein v. Chesapeake Hospital Authority*, Law No. CL13-1016 (Va. Beach Cir. Ct. July 18, 2014) (**Attachment I**).

The Authority is not pressing for a finding of sovereign immunity here, reserving that issue. *See, e.g., National Federation of the Blind v. Virginia Dep't of Corrections,* C.A. No. 3:23-cv-127, 2024 WL 1291502 (E.D. Va. Mar. 26, 2024) (Hudson, S.J.) (distinguishing sovereign immunity from Eleventh Amendment "immunity" and dismissing claim under Eleventh Amendment). Rather, these decisions show plainly that the Authority is an arm or instrumentality of the Commonwealth. Of course, states enjoy sovereign immunity from private suits. *Alden v. Maine*, 527 U.S. 705 (1999). While much of modern day sovereign immunity jurisprudence has been developed from the Eleventh Amendment, sovereign immunity is broader than the strictures of the Eleventh Amendment. *Id.* at 712–13. For purposes of this motion, all that is needed is for the Court to conclude that the Authority is equivalent to a state actor or entity, which it is.

*of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("nonconsenting States may not be sued by private individuals in federal court").

And the Eleventh Amendment prohibits individuals from using federal courts to sue State actors and entities such as the Authority. The Amendment bars "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities," *i.e.,* actions against "arms of the state." *Regents of the Univ. of Calif. v. Doe,* 519 U.S. 425, 429-30 (1997). *See, e.g., Moore v. Gregory,* 2024 WL 1774819, at *5 (same); *Wright v. Dep't of Child Support Enf't*, C.A. No. 1:23-1232, 2024 WL 1651277 (E.D. Va. Mar. 6, 2024) (Hilton, J.) ("Under the Eleventh Amendment neither states nor state agencies may be sued by private individuals in federal court."). In *Doe v. Va. Polytechnic Inst. & State University*, Civil Action No. 7:19-cv-00249, 2020 WL 1309461 (W.D. Va. Mar. 19, 2020), the Court described an analogous Due Process claim challenging the imposition of discipline (there, in the academic context):

> [T]his court has previously held that "Virginia Tech is designated by statute as a corporation under the control of the General Assembly, Va. Code Ann. § 23.1-2600 (2016), and as such its status is the same as any other state agency." *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.,* No. 7:18cv000189, 2018 WL 5018487, at *4 (W.D. Va. Oct. 15, 2018); *Collin v. Rector & Bd. of Visitors of the Univ. of Va.,* 873 F. Supp. 1008 (W.D. Va. 2005) (finding that the University of Virginia is a state agency entitled to complete immunity). . . . Accordingly, the court will grant defendants' motion to dismiss [on the basis of Eleventh Amendment immunity] pursuant to Rule 12(b)(1) as to Virginia Tech.

*Id.* at *4 (citation omitted). *See, e.g., Amison v. George Mason Univ.,* No. 23-1042, 2023 WL 8946774 (4th Cir. Dec. 28, 2023) (Eleventh Amendment "immunity also extends to state agencies and other government entities properly characterized as 'arms' of the State").

The Authority is a state-created entity that partakes of the sovereignty of the State of Virginia, and the Eleventh Amendment prohibits this Court from entertaining Dr. Hardy's suit.

C. **The Authority's Status Means it is Not a "Person" for Section 1983 Purposes**

Section 1983 provides that "[e]very person who, under color of any statute . . .subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." That is, Section 1983 creates a cause of action against a "person" within its scope. It is well-settled that the term "person" for purposes of Section 1983 does not include a state, a state entity, or a state official sued in an official capacity for damages. The governing principle is set forth in *Will v. Michigan Dep't of State Police,* 491 US 58, 64 (1989) ("a State is not a person within the meaning of § 1983"). Again, analogs exist regarding academic discipline:

> Virginia Tech argues that Zhao's § 1983 claim against it cannot succeed as a matter of law because the university is not a "person" for purposes of § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must prove the deprivation of a civil right by a "person" acting under color of state law. In *Will v. Michigan Dep't of State Police*, the Supreme Court plainly held that a suable "person" under § 1983 does not include a state, a state agency, or a state official sued in his or her official capacity for damages. 491 U.S. 58, 70-71 (1989). In other words, § 1983 does not provide "a federal forum for litigants who seek a remedy against a [s]tate for alleged deprivations of civil liberties." Id. at 71. Virginia Tech is designated by statute as a corporation under the control of the General Assembly, Va. Code Ann. § 23.1-2600 (2016), and as such its status is the same as any other state agency. See *Carboni v. Meldrum*, 949 F. Supp. 427, 433 (W.D. Va. 1996) (Virginia Tech is an arm of the state); *Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008, 1013 (W.D. Va. 2005) (Board of Visitors at UVA same as other state agencies). Virginia Tech clearly falls outside the scope of a "person" for § 1983 purposes.

*Zhao v. Va. Polytechnic Inst. & State Univ.,* No. C.A. 7:18-cv-189, 2018 WL 5018487, at *3 (W.D. Va. Oct. 15, 2018).

As an arm of the Commonwealth of Virginia, the Authority is not a "person" amenable to suit under Section 1983.

## II.  THE CLAIM IS TIME-BARRED

Dr. Hardy's Complaint pleads a single count: that the procedures used by the Authority in his suspension in 2021 did not comport with Due Process.  This claim is time-barred.

Section 1983 itself does not contain a statute of limitations.  "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 263-64 (1985).  *Wilson* is dispositive.  One of the pre-eminent principles governing that decision is that, within each state, "one most appropriate statute of limitations for all § 1983 claims should be determined."  *Id.* at 275.  The Court held that "the tort action for the recovery of damages for personal injuries is the best alternative available," *id*. at 276 (after cataloging the variety of Section 1983 analogs, including claims alleging "discharge or demotion without procedural due process," 471 U.S. at 273 (footnote omitted)). In Virginia, that limitations period has long been two years.  Va. Code § 8.01-243.[4]

The Complaint was filed on March 28, 2024.  Claims accruing prior to March 2022 are time-barred.  Yet the Complaint alleges:

- The initial Notice of Precautionary Suspension was issued August 5, 2021.  Compl. ¶ 6.
- The Authority's Medical Executive Committee issued a "Notice of Continued Precautionary Suspension" on August 11, 2021.  Compl. ¶ 8.

---

[4]  If the Court were writing on a clean slate, given the retaliation claims in the Complaint, the closest state analog would be found in the 2020 Virginia Whistleblower Protection Act, Va. Code § 40.1-27.3, which mandates a one-year statute of limitations.  Section 40.1-27.3(C).

- On August 17, 2021, Hardy was advised of his right to convene an Ad Hoc Committee to consider the suspension, and was provided with a summary of his rights under the Medical Staff By-Laws. Compl. ¶ 9.

- The Ad Hoc Committee hearing occurred on October 22, 2021. Compl. ¶ 10. The composition of the Ad Hoc Committee, one of Dr. Hardy's concerns, obviously was determined prior to this date. The Ad Hoc Committee determined that the Medical Executive Committee did not act arbitrarily, capriciously, or unreasonably. Compl. ¶ 16.

- Dr. Hardy exercised his right to a second-level appeal, to the Governing Board of the Authority, which was denied on January 12, 2022. Compl. ¶ 18.

Each one of these actions occurred more than two years before the filing of the Complaint in March of 2024.

Moreover, the limitations period in situations of this type begins to run not when the final appeal of a multi-level appeal process has been decided, but rather when the initial decision is made and the plaintiff is first notified. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 259 (1980). As the *Ricks* Court explained, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 258. (Title VII claim.) *See Martin v. Clemson Univ.,* 654 F. Supp. 2d 410, 431 (D.S.C. 2009) (applying *Ricks* in case under Section 1983 and 42 U.S.C. 1981 to find that plaintiff's cause of action accrued when she was denied tenure in April 2005, rather than in March 2007 when university issued its final ruling on her appeal). *See also Doe v. Va. Polytechnical Inst. & State Univ.,* 617 F.Supp.3d 412 (W.D. Va. 2022) (Urbanski, J.) ("clear" that limitations period began to run when plaintiff was informed of decision; "his claim based on the 2018 decision is barred by the two-year statute of

limitations") (Title IX claim in combined Title IX and Section 1983 case). As Judge Hudson has written:

> Virginia's statute of limitations requires that § 1983 claims be brought within two years. Va. Code Ann. § 8.01-243(A). "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.,* 64 F.3d 951, 955 (4th Cir. 1995) (citing United States. v. Kubrick, 444 U.S. 111, 122-24 (1979)).

*Bland v. Va. State Univ.,* No. 3:06CV513-HEH, 2007 WL 446122, at *5 (E.D. Va. Feb. 7, 2007).

Under *Ricks*, the statute of limitations began to run on August 5, 2021, when Dr. Hardy was informed of his suspension – not on January 12, 2022, when he exhausted his appeals. But no matter how the accrual date is treated, the Complaint was filed more than two years after the last act in the process. The entirety of Dr. Hicks' claim is barred by the two-year statute of limitations.

### III.  DR. HARDY WAS NOT DENIED DUE PROCESS

Dr. Hardy makes a "procedural" Due Process claim. To succeed on a procedural due process claim, the plaintiff must show (1) that he had a constitutionally cognizable life, liberty, or property interest; (2) that deprivation of that interest was caused by some form of state action; and (3) that the procedures employed were constitutionally inadequate. *Sansotta v. Town of Nags Head,* 724 F.3d 533, 540 (4th Cir. 2013) (internal citations and quotations omitted). For present purposes, this memorandum will focus on the third factor, the procedures employed.[5]

---

[5] Indeed, Dr. Hardy finds himself on the horns of a dilemma. Section 1983 claims which are **not** barred by the Eleventh Amendment include "individual capacity acting under state law" claims and "municipal liability acting pursuant to policy and custom" claims, neither of which he pleads. Setting aside these Section 1983 variants, not relevant to this action, leaves him with a Section 1983 claim against an entity of the state itself: precisely the kind of suit the Eleventh Amendment forbids this Court from entertaining.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted).

An instructive case, albeit unpublished, is the Court of Appeals' decision in *Loxley v. Chesapeake Hospital Authority,* 166 F.3d 333 (table), 1998 WL 827285 (4th Cir. Dec. 1, 1998). There, as here, a physician challenged the Authority's restriction of and failure fully to reinstate his privileges at Chesapeake Hospital. There, as here, the physician received an adverse determination from the Medical Executive Committee. There, as here, the physician appealed to the Ad Hoc Committee, which recommended reinstatement for a year with conditions. Not satisfied, there, as here, the physician appealed to the governing board, which adopted the decision of the Ad Hoc Committee. After not meeting the conditions, the physician applied for full reinstatement: again the MEC recommended against him, the Ad Hoc Committee recommended conditional reinstatement, and the governing board confirmed the decision of the Ad Hoc Committee. The physician sued.

> The district court held that the Fourteenth Amendment applied to the Hospital, which is a state entity, but that Loxley did not have a protected property or liberty interest affected by the Authority's actions. It went on to dismiss Loxley's procedural due process claim on summary judgment (in light of the parties' [evidentiary] submissions) and his substantive due process claim for failure to state a claim. Finally, the district court dismissed the equal protection claim for failure to state a claim and dismissed Loxley's pendent state-law claims.

*Loxley v. Chesapeake Hosp. Auth.*, No. 97-2539, 1998 U.S. App. LEXIS 30551, at *5-6 (4th Cir. Dec. 1, 1998). On appeal, the Fourth Circuit assumed (but did not decide) that a protected interest existed, and affirmed the decision because the physician received all the "process" he was "due." Even if particular physicians held animus against the physician, "active animus toward [him] . . .

13

cannot translate into bias that would violate the Due Process Clause." The Court noted, when discussing the substantive Due Process claim in that case:

> The governing board of a hospital must [ ] be given great latitude in prescribing the necessary qualifications for potential applicants. *Woodbury v. McKinnon*, 447 F.2d 839, 845 (5th Cir. 1971) (citations and internal quotation marks omitted). See Duffield, 361 F. Supp. at 404 ("Judicial review of the merits of internal hospital decisions is strictly limited and the courts should not substitute their judgment for hospital agency judgment."); *Shahawy v. Harrison*, 875 F.2d 1529, 1533 (11th Cir. 1989) ("[H]ospital boards possess broad discretion.") (internal quotation marks omitted). . . .

1998 U.S. App. LEXIS 30551, at *12-13. Dr. Hardy had a meaningful opportunity to be heard. He was heard by the MEC. He was heard by the Ad Hoc Committee, and the only "animus" he pleads is that the members were employed by the hospital. (Of course, even if true, that would create an incentive for correct decision-making, not the opposite.) And his arguments were heard by the board, against which he pleads no fact suggesting animus, or bias. He received a full and fair hearing; nothing more is required. As the Court of Appeals cautioned in *Moore v. Williamsburg Regional Hospital*, 560 F.3d 166 (4th Cir. 2009):

> Plaintiff claims that [the Hospital] violated his substantive due process rights when it suspended his privileges based on "unproven allegations" and therefore is liable for damages resulting from, among other things, his lost practice, loss of reputation and dignity, loss of contracts, and emotional distress. Given the sheer number of tort-like claims plaintiff raises, it is easy to see through his **attempt to make an end run around HCQIA immunity by turning § 1983 and the Due Process Clause into the "font of tort law" that the Supreme Court has consistently rejected**. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Waybright v. Frederick County, 528 F.3d 199, 204 (4th Cir. 2008) (collecting cases).

*Id.* at 180 (emphasis added). That Court concluded, the physician's "claim fails because the procedures [the Hospital] afforded him exceed the constitutional threshold established by *Mathews v. Eldridge,* 424 U.S. 319 (1976). Plaintiff was notified of the allegations against him, given ample

14

opportunity to present evidence, allowed to call and cross-examine witnesses, and was represented by counsel throughout. There was no procedural due process violation." *Id*. at 180.

The invocation of procedural Due Process fails on the merits and should be dismissed.

## IV. THE AUTHORITY IS ENTITLED TO IMMUNITY

The Health Care Quality Improvement Act ("HCQIA") provides immunity from damages to participants[6] in a "professional review action" if the action "meets certain standards and follows certain procedures." *Moore v. Williamsburg Reg'l Hosp.*, 560 F.3d 166, 171 (4th Cir. 2009) (holding that HCQIA immunity applied and insulated defendant hospital from plaintiff's state law damages claim); 42 U.S.C. § 11111(a)(1). For HCQIA immunity to apply, the professional review action[7] must be based on the physician's competence or professional conduct.[8] Unless rebutted by a preponderance of the evidence, a professional review action is presumed to have met all standards[9] necessary for immunity. 42 U.S.C. § 11112(a)(4).

---

[6] 42 U.S.C. § 11111(a)(1) provides immunity to the "professional review body" and any person who participates with or assists the body with respect to the professional review action. 42 U.S.C. § 11151(11) defines "professional review body" to include the health care entity and governing body of a health care entity which conducts the professional review activity, such as CHA.

[7] A "professional review action" means an action or commendation of a professional review body taken or made in the conduct of a professional review activity (including suspending a physician's medical privileges) based on the competence or professional conduct of an individual physician. 42 U.S.C. § 11151(9).

[8] The *Moore* court has stated that a "professional review action" requires a clear nexus between the basis for an action and a physician's medical practice. *Moore v. Williamsburg Reg'l Hosp.*, 560 F.3d 166, 173 (4th Cir. 2009).

[9] For purposes of immunity, a professional review action must be taken: (1) in the reasonable belief the action was in the furtherance of quality healthcare, (2) after reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved, and (4) in the reasonable belief the action was warranted by the facts known and after meeting the requirements in (3). 42 U.S.C. § 11112(a)(1)-(4).

Dr. Hardy was provided with notice of the action taken, of his right to request a hearing, and a summary of his rights at the hearing under the Medical Staff Bylaws. Compl. ¶¶ 6, 8-10. After the Ad Hoc Committee hearing, Dr. Hardy sought appellate review to the Governing Board, which upheld the Ad Hoc Committee's decision. Compl. ¶ 17-18. Notably, Dr. Hardy's problem with the procedure was based on the following issues: (1) his speculation that the notice of suspension arose from alleged retaliation against Dr. Hardy for questioning CHA management, (2) CHA rejecting his panel member recommendation, and (3) that the Ad Hoc Committee members were employed by the hospital.[10] Compl. ¶¶ 7, 12, 14.

Dr. Hardy's speculations are conclusory allegations without any factual support within the Complaint. Indeed, Dr. Hardy states that the initial notice "seemingly" arose from Dr. Hardy's questioning of CHA management, without any factual allegations as to the what, when, where, or why of his questioning. Compl. ¶ 7.

Dr. Hardy's issue with the fact that CHA rejected his panel member recommendation is unfounded. Per 42 U.S.C. § 11112(b)(3)(A)(iii), a panel of individuals appointed by the entity (in this case, CHA) satisfies the statutory safe harbor requirements, with no requirement that the entity consider any recommendations by the physician as to the panel make-up. It necessarily follows, then, that rejecting a recommendation and appointing the panel without input from the physician does not constitute a violation of the adequate notice and hearing procedure requirement of 42 U.S.C. § 11112(a)(3).

---

[10] 42 U.S.C. § 11112(b) provides a list of procedures and conditions that create a statutory safe harbor for the "adequate notice and hearing" requirement in 42 U.S.C. § 11112(a)(3). Dr. Hardy also took issue with the fact that a member of his practice discipline was not on the Ad Hoc Committee panel. Notably, the statutory safe harbor requires that the panel appointed by the entity does not include individuals in direct economic competition with the physician involved. Arguably, an OB/GYN physician *would* be in direct economic competition with Dr. Hardy.

Dr. Hardy's issue with the employment status of the panel members was due to his allegation that they were inherently biased based on their employment and financial relationship with CHA. This assumes that employment by the hospital would create a bias in favor of suspension, when in fact it may create the opposite – a tendency to want to make careful, correct decisions that will protect the hospital from controversy such as the one at hand. Regardless, in the HCQIA immunity context, the subjective biases or bad faith motives of the peer reviewers are irrelevant. *See Hein-Muniz v. Aiken Reg'l Med. Ctrs.*, 532 F. App'x 342, 344 (4th Cir. 2013) (citing *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 914 (8th Cir. 1999); *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1279 (10th Cir. 2012)). Accordingly, whether or not the panel members were inherently biased due to their employment status is immaterial.

The Complaint fails to allege any facts that would overcome the presumption that the professional review action met all standards required for immunity. Dr. Hardy attempts to avoid immunity by asserting that the Authority's conduct was "extreme and outrageous and . . . arbitrary," Compl. ¶ 25, and that the Authority "evinced a conscious disregard of Hardy's rights," Compl. ¶ 28. This is not the statutory standard for avoiding immunity, and these cursory allegations do not meet the *Iqbal/Twombly* standard of specificity. In addition, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). Even Dr. Hardy's conclusory allegation that the suspension "seemingly" arose from his questioning of CHA management does not satisfy the *Iqbal*/*Twombly* standard of specificity. When "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but not shown

17

that the pleader is entitled to relief." *Francis*, 588 F.3d at 193. Accordingly, the Complaint should be dismissed.

                              **CHESAPEAKE HOSPITAL AUTHORITY**

                              By: */s/ Ahmed E. Mohamed Khalil*
                                            Counsel

## CERTIFICATE OF SERVICE

      I certify that on this 17th day of May, 2024, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to all counsel of record.

                              */s/ Ahmed E. Mohamed Khalil*
                              John M. Bredehoft (VSB No. 33602)
                              Ahmed E. Mohamed Khalil (VSB No. 98315)
                              KAUFMAN & CANOLES, P.C.
                              150 West Main Street, Suite 2100
                              Norfolk, VA 23510
                              Telephone: (757) 624-3000
                              Facsimile: (888) 360-9092
                              jmbredehoft@kaufcan.com
                              amkhalil@kaufcan.com
                              *Counsel for Defendant Chesapeake Hospital Authority*

22506871