IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **TIMOTHY J. HARDY,** ) | |
| ) | |
|    **Plaintiff,** ) | |
| ) | |
|    v.  ) | C.A. No. 2:24-cv-00029 EWH/RJK |
| ) | |
| **CHESAPEAKE HOSPITAL AUTHORITY** ) | |
|  **t/a CHESAPEAKE REGIONAL** ) | |
|  **MEDICAL CENTER,** ) | |
| ) | |
|    **Defendant.** ) | |

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
### OF ITS MOTION TO DISMISS THE COMPLAINT

Defendant Chesapeake Hospital Authority ("CHA" or the "Authority") has moved to dismiss the Complaint filed by plaintiff, Timothy J. Hardy, a physician whose staff privileges to practice at the hospital were suspended in 2021. Dr. Hardy brings his claims pursuant to 28 U.S.C. § 1983. The Authority has filed a memorandum in support of its motion, and Dr. Hardy has filed a response. This reply memorandum addresses the arguments made in Dr. Hardy's response. This case should be dismissed.

### SUMMARY OF ARGUMENT

The Authority has proffered several warrants for dismissal of the Complaint with prejudice; Dr. Hardy's response has clarified the parties' positions. There appear to be two essentially unopposed reasons to dismiss the Complaint, one additional reason where the law and the facts are crystal clear in favor of the Authority, and two additional reasons for dismissal where an examination of the law counsels dismissal. For clarity, this summary will note the reasons for

1

dismissal in that order, while the body of the reply will address Dr. Hardy's responses in the order the arguments have been made in the prior two briefs.

**First**, the Authority moved for dismissal of this Section 1983 case on the basis that it is, as Dr. Hardy pleads, "a public body created and existing under the laws of the Commonwealth of Virginia." Compl. ¶ 2. A plethora of cases have held that the Authority is an arm of the Commonwealth. Since a State **is not a "person" that may be sued under Section 1983**, the Complaint should be dismissed on that basis. Dr. Hardy's responsive memorandum does not mention or attempt to controvert this argument; the argument is well-taken, and the Court should adopt it. (Dr. Hardy's arguments regarding permissible actions against state officials – which he has not filed – or against municipalities for "pattern and practice claims" – which he also has not pled -- are discussed below in the context of 11th Amendment immunity.)

**Second**, the Authority moved for dismissal of the claims against it based on a particular form of statutory immunity for medical peer review boards conferred by 42 U.S.C. §§ 11101, *et seq.*, the Health Care Quality Improvement Act ("HCQIA"). Once again, Dr. Hardy's memorandum does not address or even mention this **statutory HCQIA immunity**. Rather, his response focuses only on a different kind of judge-made immunity: qualified immunity for constitutional claims asserted against individual defendants where the constitutional standard alleged to have been violated has not previously been articulated clearly. The type of immunity Dr. Hardy's response memorandum argues against is found, most often, in unconstitutional seizure or search cases under the Fourth Amendment. The Authority did not argue the existence of this kind of judge-made immunity here. Again, Dr. Hardy's response memorandum does not mention or attempt to controversy the existence of HCQIA immunity; the Authority's argument is well-taken, and the Court should adopt it.

The **third** clear reason for dismissal is that Dr. Hardy has missed the **statute of limitations**. His argument – that the statute begins to run from the denial of the appeal of the denial of the appeal of the imposition of his suspension – has been rejected by all post-*Ricks* courts. He received initial notice of his suspension on August 5, 2011; the Medical Executive Committee ("MEC") issued its notice of suspension on August 11; the Ad Hoc Committee ("AHC") hearing confirmed the suspension on October 22, and the Authority's governing Board upheld the AHC's decision upholding the MEC's decision upholding the initial notice of suspension on January 12, 2022. Only this last date is within the two-year period preceding the filing of the Complaint on January 12, 2024.[1] Yet *Ricks* itself, as well as its progeny – indeed, the cases cited in Dr. Hardy's response themselves – make clear that the accrual of the action does not occur at the denial of the last stage of the appeal, but when the plaintiff has been notified of the action to be taken. Dr. Hardy knew of his suspension well before January 12, and his pursuit of multiple levels of appeal, or subsequent injury to him, does not change the accrual date or constitute some form of "continuing violation." The Complaint should be dismissed with prejudice based on the two-year statute of limitations.

Only the two remaining reasons for dismissal require parsing the case law in detail:

- The **fourth** reason for dismissal is the bar to this Court's exercise of jurisdiction enacted by the **11th Amendment**. The Authority is undoubtedly an agency of the Commonwealth, established as such by an Act of the General Assembly, and meeting all Virginia-law factual prerequisites to share in the sovereignty of the

---

[1] The Authority's initial memorandum noted an erroneous date for the filing of the Complaint; incorrectly using the date the summons was issued. As Dr. Hardy notes, the Complaint was in fact filed January 12, 2024. Counsel for the Authority apologizes to the Court and to Dr. Hardy for this error (the error having been made by Mr. Bredehoft). The error does not, however, affect the untimeliness of the Complaint.

Commonwealth. It is not a municipality, or a county. Like the University of Virginia hospital, and George Mason University, and Virginia Tech, it is an arm of the state, and entitled to assert 11th Amendment immunity.

- The **fifth** reason for dismissal is more fact-bound, but is clear on the law when the actual allegations of the Complaint are examined: Dr. Hardy received all process that was due. That the Authority's employees were biased against him at the AHC level remains a mere supposition, and Dr. Hardy still raises no reason to question the adequacy of the review proceedings. His allegations against the process are cursory and do not meet the *Iqbal/Twombly* standard of specificity.

The Authority's motion should be granted and the Complaint should be dismissed.

## ARGUMENT

I. **THE ELEVENTH AMENDMENT PREVENTS THIS COURT FROM EXERCISING JURISDICTION OVER THIS COMPLAINT**

Dr. Hardy makes several arguments against the Authority invoking the provisions of the 11th Amendment. Those arguments are inapposite.

*Ex parte Young*, 209 U.S. 123 (1908), has nothing to do with this case. *Young* deals with official-capacity claims against individual defendants for a prohibitory injunction, not with a claim against an arm of the state itself for a mandatory injunction. (And it would certainly not permit Dr. Hardy to press any claim for money damages.) *See Whole Women's Health v. Jackson,* 595 U.S. 30, 39 (2021) ("Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity. . . . To be sure, in *Ex parte Young*, this Court recognized a **narrow** exception grounded in traditional equity practice—one that allows certain

4

private parties to seek judicial orders in federal court preventing state executive **officials** from **enforcing** state laws that are contrary to federal law.") (emphasis added). Moreover, the *Ex parte Young* doctrine applies only where the violations of federal law are alleged to be ongoing; here, all actions have been completed. *Goldman v. Northam,* 566 F. Supp. 3d 490, 500 (E.D. Va. 2021) (Novak, J.).

Dr. Hardy argues that agencies can be held liable for unconstitutional action that is shown to result from policy or custom, citing *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988). Again, this argument is inapposite, and the citation suggests a result opposite to the one Dr. Hardy seeks. In that case, the Supreme Court held that the City (a municipality, not an arm of the state) could be held liable under Section 1983 only if those with a final and unreviewable authority established an unconstitutional policy. Where a subordinate's decision is constrained or subject to review, the reviewing officials have final authority, and the Mayor there "did not enact an ordinance permitting retaliatory transfers or layoffs." *Praprotnik, 485 U.S. at 114.* Mere failure to investigate a lower-level decision, or acquiescence in a subordinate's decision, does not permit a Section 1983 action against the agency.[2] In any event, this line of authority has no relevance to Dr. Hardy's claims and would not be supported by the allegations of the Complaint.

Dr. Hardy also suggests the dispositive question for 11th Amendment coverage is whether the Commonwealth itself might be liable for a money judgment, citing among other cases *Hess v. Port Authority Trans Hudson Corp.,* 513 U.S. 30 (1994). That case is inapposite: it involved the New York Port Authority, which is neither a state nor a state agency but a creature of interstate

---

[2] There are innumerable cases plumbing the depths of what form of action can be a "policy or custom" sufficient to impose Section 1983 liability. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Suffice it to say that neither Dr. Hardy's response memorandum, nor the allegations of the Complaint itself, attempt to articulate such a theory of liability. Nor could they.

compact, which is assumed not to be clothed with 11th Amendment protection unless the creating states and Congress intended it to be. 513 U.S. at 40-43. "Suit in federal court is not an affront to the dignity of a Compact Clause entity, for the federal court, in relation to such an enterprise, is hardly the instrument of a distant, disconnected sovereign; rather, the federal court is ordained by one of the entity's founders. Nor is the integrity of the compacting States compromised when the Compact Clause entity is sued in federal court." *Id.* at 41. And while the *Hess* court discussed financial liability, it also made clear that a core value of the 11th Amendment is the dignity of the state: "More pervasively, current Eleventh Amendment jurisprudence emphasizes the integrity retained by each State in our federal system: 'The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity.'" 513 U.S. at 39 (citations omitted). The plethora of decisions cited in the Authority's opening memorandum at 6-7 n.3 make it plain that the Authority partakes of the sovereign immunity —the sovereignty, the dignity – of the Commonwealth.

And Dr. Hardy's conclusion that the 11th Amendment does not protect "other governmental entities that are not political subdivisions of the state," is simply incorrect. Response Brief at 4. *See, e.g,, Amison v. George Mason Univ.,* No. 23-1042, 2023 WL 8946774 (4th Cir. Dec. 28, 2023); *Doe v. Va. Polytechnic Inst. & State University*, Civil Action No. 7:19-cv-00249, 2020 WL 1309461 (W.D. Va. Mar. 19, 2020); *Zhao v. Va. Polytechnic Inst. & State Univ.*, No. C.A. 7:18-cv-189, 2018 WL 5018487, at *3 (W.D. Va. Oct. 15, 2018); *Carboni v. Meldrum*, 949 F. Supp. 427, 433 (W.D. Va. 1996) (Virginia Tech); *Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008 (W.D. Va. 2005).

**Finally**, since the Authority stands in the shoes of the Commonwealth, it is not a "person" amenable to suit under Section 1983.  As noted above in the Summary of Argument, Dr. Hardy's brief does not address this at all.  *Will v. Michigan Dep't of State Police,* 491 US 58, 64 (1989).

## II.   THE CLAIM IS TIME-BARRED

The parties agree that the proper statute of limitations for this case is two years.  The parties agree as to the dates pled in the Complaint (certainly for purposes of this motion).  The parties agree that this action was filed on January 12, 2022 – two years to the day from the denial of Dr. Hardy's last-level appeal.  And the parties agree that the accrual of this action is governed by federal law.

Those points of agreement make the resolution of this argument simple.  Dr. Hardy's position, that the statute began to run when his final level appeal was denied, was expressly rejected by *Delaware State Coll. v. Ricks*, 449 U.S. 250, 259 (1980). As the *Ricks* Court explained, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 258.  (Title VII claim.)  Indeed, in *Ricks* itself, the Supreme Court held that the limitations period began when he was informed by the Board of Trustees that he would be denied tenure – and not when his grievance was denied three months later, nor even when a proffered "terminal one year contract" expired a year after he was told about the tenure decision.

> [T]he filing limitations periods therefore commenced -- at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure -- the eventual loss of a teaching position -- did not occur until later. . . .  It is simply insufficient for Ricks to allege that his termination "gives present effect to the past illegal act, and therefore perpetuates the consequences of forbidden discrimination."  The emphasis is not upon the effects of earlier employment decisions; rather, it "is [upon] whether any present violation exists."

7

449 U.S. at 258 (citations and footnote omitted). The Supreme Court, in other words, expressly rejected the interpretation Dr. Hardy argues here. The principle applies with full force and effect in Section 1983 cases involving termination of employment. *See, e.g., Chardon v. Fernandez,* 454 U.S. 6 (1981) (in Section 1983 case, statute of limitations began to run when employees received notice that their appointments would terminate in the future, not on date of actual termination*); Martin v. Southwest Virginia Gas Co.,* 1355 F.3d 307 (4th Cir. 1998) (statute began to run when employee informed of discharge, and was not tolled or extended by employee's request for reasonable accommodation to continue to work) (ADA); *Lendo v. Garrett Co. Board of Education,* 820 F.2d 1365 (4th Cir. 1987) (statute begins to run when first notified of termination); *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) ("[T]he filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition."); *Martin v. Clemson Univ.,* 654 F. Supp. 2d 410, 431 (D.S.C. 2009) (cause of action accrued when plaintiff was denied tenure in April 2005, rather than in March 2007 when university issued its final ruling on her appeal).

As Judge Dillon wrote in *Reid v. James Madison University,* 2022 WL 909845, No. 5:21-cv-00032 (E.D. Va. Mar. 29, 2022), a case that appears to be directly on-point:

> The parties disagree about when the claims accrued. The University Defendants argue that the claims are untimely because they accrued no later than April 30, 2019, when Dean Aguirre issued his decision, more than two years before this lawsuit was filed on May 3, 2021. Reid argues that her claims did not accrue until June 19, 2019, when Provost Coltman denied Reid's appeal and affirmed Dean Aguirre's decision.
>
> "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." . . . "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." (citing *Ricks*, 449 U.S. 258). In *Ricks*, the Court rejected the argument that the

8

>cause of action accrues when a grievance related to the adverse action is denied. The court reasoned that "entertaining a grievance ... does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made." Id. at 261 (emphasis in original). Moreover, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." Id. While *Ricks* was a Title VII case, courts have applied the Ricks accrual analysis to Section 1983 due process claims. . . .

Slip Op. at 6 (citations omitted).[3]

Under *Ricks*, the statute of limitations began to run on August 5, 2021, when Dr. Hardy was informed of his suspension – or, no matter how parsed, began to run some time in 2021. It did not begin to run on January 12, 2022, when he exhausted his appeals. The entirety of Dr. Hardy's claim is barred by the two-year statute of limitations.

### III.     DR. HARDY WAS NOT DENIED DUE PROCESS

Dr. Hardy's response memorandum makes it plain he has not pled a "procedural" Due Process claim. He agrees that "[t]he question is not whether the Plaintiff has had notice and an opportunity to be heard; he did." His contention is that the hearing he received was not fair.

First, the entirety of Dr. Hardy's argument about unfairness or bias in the hearing process focuses – Response Memorandum, at 7 – on supposed bias in the AHC, the first-level appeal body. The Complaint does not allege any bias or irregularity in the issuance or continuation of his suspension made initially by the MEC. Neither does the Complaint allege any bias or irregularity

---

[3]    The sole case cited by Dr. Hardy on this issue is *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158 (4th Cir. 1991). It does not help him. In that "takings" case based on billboard regulation, the Court held that the statute of limitations began when the plaintiff was apprised of a change in the law, not years later when the law began to be enforced.

9

in the final appeal review of his suspension by the second-level review body, the Authority's Board. So what we have are allegations not that the suspension decision was made by a biased adjudicator, and not that the final appeal was denied by a biased adjudicator, but rather that the intermediate-level AHC may have been predisposed against Dr. Hardy. Yet, as the Authority's initial memorandum explains, it is hard to discern a violation of due process where an unbiased body makes a finding, an appeal body affirms that finding, and an unbiased second appeal agrees. Perhaps the case would be different if the MEC had been reversed by the AHC (despite its name, a body established consistent with the bylaws), but it wasn't. The case for suspension was looked at by an unbiased decision-making body and an unbiased appellate body, and they agreed. The fact that a possibly-biased intermediate entity **also** agreed does not mean due process was ill-served.

Second, the allegations Dr. Hardy relies upon to suggest bias in the AHC cannot withstand scrutiny under the *Iqbal/Twombly* standard. They are precisely the kind of bald assertions that are entitled to no weight on a motion to dismiss:

- Hardy alleges he questioned Hospital management and the initial notice of preliminary suspension "seemingly arose" from those questions, There is nothing about who in management was questioned; when the questions arose; how management reacted, or any connection – alleged in the form of factual information rather than what "seemingly arose" – between those questions (of whom) and anyone involved in the suspension process at any time.

- There is no allegation that Dr. Hardy was not guilty of the infraction that purportedly caused the suspension!

10

- The allegation that Hospital employees and a contractor on the AHC were "inherently biased" also remains a mere supposition. Who is supposed to be on the Committee? Individuals unfamiliar with the Hospital? And Dr. Hardy's only specific criticism (hardly of federal constitutional magnitude) of the AHC is that it did not contain an OB/GYN – who, as an economic competitor of Dr. Hardy's would have been barred from participating by the Bylaws.

- As employees and affiliates of the Hospital, it is at least as likely that the members of the AHC would be "biased" in favor of the most accurate resolution of Dr. Hardy's appeal – not biased against him if he were correct. The Hospital, its employees, and purportedly Dr. Hardy had a shared, not antagonistic, interest in providing quality care.

- Dr. Hardy alleges that his recommendation for a panel member was rejected. But (and consistent with the authorities discussing Due Process requirements as discussed in the Authority's initial memorandum), it can hardly be a requirement of due process that the appellant gets to select the person to hear the appeal.

And, as Dr. Hardy's response memorandum makes clear, that is all there is. No allegation that any member of the AHC bore personal animus towards Dr. Hardy (and, as the cases cited in the Authority's initial memorandum hold, even that would not rise to the level of a due process violation). No allegation that any member of the AHC was unqualified either medically or legally to serve. No allegation that anyone conspired with anyone else to fix the composition of the AHC. No allegation that the AHC denied Dr. Hardy the opportunity to present evidence, or to question witnesses. No allegation that the AHC, or any member of the AHC, made a decision contrary to the evidence, or ignored evidence. This is not a violation of due process.

11

## IV.  THE AUTHORITY IS ENTITLED TO STATUTORY IMMUNITY

The Authority has moved for dismissal under the statutory immunity provisions of the HCQIA. As explained in the Authority's opening brief, that statute provides immunity from damages to participants in a professional review action" if the action "meets certain standards and follows certain procedures", all of which exist here (and which, in any event, are generally presumed to exist as a matter of law). 42 U.S.C. § 11112(a)(4).

Dr. Hardy's response memorandum does not address this argument. None of the case law he cites in his memorandum at pp. 8-9 addresses **statutory** immunity in general or **HCQIA** immunity in particular. Rather, every case cited in that section of Dr. Hardy's memorandum discusses the **judge-made qualified** immunity afforded individual government employees for constitutional torts, when the constitutional standards had not been "clearly established." That issue comes up frequently in, for example, use-of-force or search-and-seizure cases, but the Authority has not raised it here.[4]

HCQIA provides the Authority with complete immunity, and Dr. Hardy has not articulated any reason why dismissal would be inappropriate on this basis as well.

## CONCLUSION

Dr. Hardy's claims are plainly time-barred. He has not articulated any theory on which he overcomes the presumptive statutory HCQIA immunity or the bar to suing a "state," since it is not a "person" amenable to suit under Section 1983. He was provided with ample process, including multiple levels of appeal (as to which he has no complaint of constitutional dimension). And as

---

[4]  That is just the type of case Dr. Hardy cites in his brief: excessive force cases, prison regulations impinging on religious preference, a First Amendment challenge to the denial of "Millionaire Parties" at a "Gentleman's Club." None of the cases involve healthcare or the denial of privileges or employment, much less HCQIA.

12

an entity established by the Commonwealth and sharing in its dignity and other attributes of sovereignty, suit against the Authority in federal court is foreclosed by the 11th Amendment. The motion to dismiss should be granted and the Complaint dismissed with prejudice.

**CHESAPEAKE HOSPITAL AUTHORITY**


By: */s/ John M. Bredehoft*
            Of Counsel


John M. Bredehoft (VSB No. 33602)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (888) 360-9092
E-mail: jmbredehoft@kaufcan.com

Ahmed E. Mohamed Khalil (VSB No. 98315)
KAUFMAN & CANOLES, P.C.
11815 Fountain Way, Suite 400
Newport News, VA 23606
Telephone: (757) 624-3000
Facsimile: (888) 360-9092
E-mail: amkhalil@kaufcan.com

*Counsel for Defendant Chesapeake Hospital Authority*

# CERTIFICATE OF SERVICE

I certify that on this 1st day of July, 2024, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to all counsel of record.

By: */s/ John M. Bredehoft*
    Of Counsel


John M. Bredehoft (VSB No. 33602)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone:(757) 624-3000
Facsimile:  (888) 360-9092
E-mail:  jmbredehoft@kaufcan.com

Ahmed E. Mohamed Khalil (VSB No. 98315)
KAUFMAN & CANOLES, P.C.
11815 Fountain Way, Suite 400
Newport News, VA  23606
Telephone:(757) 624-3000
Facsimile:  (888) 360-9092
E-mail:  amkhalil@kaufcan.com

*Counsel for Defendant Chesapeake Hospital Authority*

14

22643081