IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TIMOTHY HARDY,

    Plaintiff,

v.

CHESAPEAKE HOSPITAL AUTHORITY,

    Defendant.

Civil Action No. 2:24-cv-29

## MEMORANDUM ORDER

Plaintiff, Timothy Hardy ("Hardy"), brings this action for alleged violations of 42 U.S.C. § 1983. Compl., ECF No. 1. These allegations arise out of the suspension of Hardy's hospital privileges from Defendant Chesapeake Hospital Authority and subsequent hearing before the Hospital's Ad Hoc Committee. *Id.* Chesapeake Hospital Authority moved to dismiss this action under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Mot., ECF No. 7. For the reasons stated below, Chesapeake Hospital Authority's Motion is GRANTED and accordingly this matter is DISMISSED with prejudice.

### I.     BACKGROUND

The factual allegations forming the basis for Hardy's claims are set out as they are pleaded in his Complaint, construing the facts in the light most favorable to Hardy. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Hardy worked at Chesapeake Hospital Authority as a licensed OB/GYN until August 5, 2021, when the Authority issued him "a Notice of Precautionary Suspension" and suspended

Hardy's "medical staff privileges." Compl. ¶¶ 5–6. This suspension "seemingly arose from Hardy's repeated questioning of [Chesapeake Hospital Authority's] management" in which Hardy suggested the hospital's decision-making was based on economics rather than a patient's care and well-being. *Id.* ¶ 7.

Chesapeake Hospital Authority's Medical Executive Committee continued Hardy's suspension on August 11, 2021, by issuing him a "Notice of Continued Suspension." *Id.* ¶ 8. On August 17, 2021, Chesapeake Hospital Authority again continued Hardy's suspension, "advised him of his right to request [a] hearing before an Ad Hoc Committee," and provided Hardy with his hearing rights pursuant to Chesapeake Hospital Authority's Medical Staff Bylaws. *Id.* ¶ 9.

A hearing before the Ad Hoc Committee was held on October 22, 2021, before a panel consisting of two Chesapeake Hospital Authority employees and a contracted agent of Chesapeake Hospital Authority. *Id.* ¶¶ 10, 12. This panel "breached [the Chesapeake Hospital Authority's] Bylaws['] prescriptions of, among other things, presenting a fair panel." *Id.* ¶ 11. Specifically, the panel was "inherently biased based on their employment and financial relationship" with the Chesapeake Hospital Authority; the panel was inconsistent with the Chesapeake Hospital Authority's prior panel membership in that it failed to include a member from Hardy's discipline; and Hardy's member recommendation had been rejected. *Id.* ¶¶ 13–14.

The Ad Hoc Committee ultimately concluded that the Medical Executive Committee "did not act arbitrarily, unreasonably, or capriciously when it issue[d] and continued the precautionary suspension of Hardy's medical staff privileges." *Id.* ¶ 16. This conclusion was upheld by Chesapeake Hospital Authority's Governing Board on appeal. *Id.* ¶ 18.

Hardy now alleges, pursuant to 42 U.S.C. § 1983, that Chesapeake Hospital Authority denied him procedural due process in violation of the Fourteenth Amendment. *See* Compl.

2

Chesapeake Hospital Authority moved to dismiss the Complaint for failure to state a claim and lack of subject matter jurisdiction. Mot.; Mem. Supp., ECF No. 8. Hardy responded in opposition to the Motion, Resp., ECF No. 12, and Chesapeake Hospital Authority replied, Reply, ECF No. 15. Accordingly, the Motion is ripe for adjudication. The Court has considered the arguments in the briefing and concludes there is no need to hold a hearing on this motion. *See* E.D. Va. Loc. Civ. Rule 7(J).

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint to determine whether a plaintiff has properly stated a claim upon which relief can be granted. Such a motion should be granted if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, to survive dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citation omitted), with all allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King*, 825 F.3d at 212. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Id.* at 678; *see also Twombly*, 550 U.S. at 555 (stating that the complaint "requires more than labels and conclusions, [or] a

formulaic recitation of the elements of a cause of action" (cleaned up)). A court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks and citations omitted).

A motion filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). While recognizing that "subject matter jurisdiction and sovereign immunity do not coincide perfectly," district courts within this circuit often consider sovereign immunity under Rule 12(b)(1). *See Trantham v. Henry Cnty. Sheriff's Off.*, No. 4:10-cv-58, 2011 WL 863498, at *3 (W.D. Va. Mar. 10, 2011) *aff'd*, 435 F. App'x 230 (4th Cir. 2011). Where a movant contends "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as is the case here, "all the facts alleged in the complaint are assumed to be true." *Adams*, 697 F.2d at 1219. "The plaintiff bears the burden of establishing that federal jurisdiction is proper." *Rashad v. Jenkins*, No. 3:15-cv-655, 2016 WL 901279, at *3 (E.D. Va. Mar. 3, 2016). However, where a movant invokes immunity under the Eleventh Amendment, it is ultimately the movant's burden to demonstrate that such immunity applies. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

### III.  ANALYSIS

Hardy brings a single claim under § 1983 alleging that Chesapeake Hospital Authority violated the Fourteenth Amendment by depriving him of his constitutionally protected property interest in his medical license without procedural due process. Compl.[1] Chesapeake Hospital

---

[1]  Hardy alleges in his Complaint that the Chesapeake Hospital Authority violated "the Fifth Amendment . . . as applied to the states through the due process clause of the Fourteenth Amendment." Compl. ¶ 21. The Fourteenth Amendment, not the Fifth Amendment, is the proper vehicle for his § 1983 claim. U.S. CONST. amend. XIV, § 2 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law.").

4

Authority moves to dismiss Hardy's Complaint on several grounds, arguing that: (1) Chesapeake Hospital Authority is not a "person" under § 1983 and is also entitled to Eleventh Amendment Immunity[2]; (2) Hardy's claim is time-barred; (3) Hardy fails to allege that Chesapeake Hospital Authority's procedures violated due process; and (4) Chesapeake Hospital Authority enjoys presumptive statutory immunity under 42 U.S.C. ¶¶ 11101, *et seq.*, which has not been rebutted. Mem. Supp. at 3–5. For the reasons stated below, Chesapeake Hospital Authority has failed to meet its burden to establish Eleventh Amendment immunity. Regardless, the Court finds that Hardy fails to state a claim for procedural due process and thus does not address Chesapeake Hospital Authority's remaining arguments.

**A. Eleventh Amendment Immunity**

Chesapeake Hospital Authority has failed to meet its burden to demonstrate that Eleventh Amendment immunity applies. The Supreme Court has described the "immunity of States from suit" as a "fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)). This immunity is reflected in the Eleventh Amendment to the Constitution, which provides that "[t]he judicial power of the United States shall not be

---

[2] Chesapeake Hospital Authority discusses Eleventh Amendment immunity and the lack of amenability to suit under § 1983 separately, but on the grounds argued, resolution turns on the same issue, whether the Chesapeake Hospital Authority is an arm of the state. *See* Mem. Supp. 7–10. An arm of the state is entitled to Eleventh Amendment immunity from suit in federal court and is also not a "person" for the purpose of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–64 (1989). Accordingly, if Chesapeake Hospital Authority is an arm of the state it is both immune under the Eleventh Amendment from suit in federal court and not a suable "person" under § 1983. The Court does note, however, that the legal underpinnings differ for each outcome. Eleventh Amendment immunity is grounded in the Constitution, whereas the Supreme Court has held that the statutory language of § 1983 requires that an arm of the state is not a "person" under § 1983. *Id.* 63–71. Municipal bodies remain subject to suit under § 1983's statutory language. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 701 (1978).

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. amend. XI. The Eleventh Amendment "has been construed to withdraw jurisdiction over any suit brought against an unconsenting State in federal court by *its own* citizens." *Martin v. Wood*, 772 F.3d 192, 195 n.1 (4th Cir. 2014) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). Where a movant invokes immunity under the Eleventh Amendment, it is ultimately the movant's burden to demonstrate that such immunity applies. *Hutto*, 773 F.3d at 543.

Eleventh Amendment immunity attaches not only to states but also to certain "[s]tate-created entit[ies] functioning as an arm of the State or its alter ego." *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008). The Fourth Circuit uses a four-factor test to determine when an entity qualifies as an arm of the state. *See U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 804 F.3d 646, 650–51 (4th Cir. 2015) (summarizing factors first set forth in *Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456 (4th Cir. 1987)). Specifically, under the *Ram Ditta* test, courts look to:

> 1) whether any judgment against the entity as a defendant will be paid by the State; 2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the state.

*Id.* On the limited arguments made, the Court finds that Chesapeake Hospital Authority has failed to demonstrate that it is entitled to Eleventh Amendment immunity. *See Hutto*, 773 F.3d at 543.

Chesapeake Hospital Authority essentially advances three arguments as to why it is entitled to Eleventh Amendment immunity without reference to the *Ram Ditta* factors. First, it notes that Hardy's Complaint pleads that Chesapeake Hospital Authority is a "public body created and

6

existing under the laws of the Commonwealth of Virginia" and confirms that the Virginia General Assembly's enabling act creating Chesapeake Hospital Authority recognizes the same. *See* Mem. Supp. at 5–6; *see also* Compl. ¶ 2; 1966 Va. Acts c.271. These facts offer the Court little guidance—recognition that an entity is a "public body" is not sufficient to determine whether it is also an arm of the state. *See e.g.*, *Cash v. Granville Cnty Bd. of Educ.*, 242 F.3d 219, 221 (4th Cir. 2001) (finding that defendant school board was not an arm of the state even though a school board is, of course, a public entity).

Next, Chesapeake Hospital Authority references a number of Virginia state court cases in which courts have found that Chesapeake Hospital Authority is entitled to sovereign immunity under Virginia law. Mem. Supp. at 6–7; Reply at 2. Out of Chesapeake Hospital Authority's three arguments, this most closely conforms to the relevant *Ram Ditta* factor—specifically, the fourth factor requiring courts to consider how the entity is treated under state law. *Oberg*, 804 F.3d at 650–51. Under this factor, courts can consider "relevant state statutes, regulations, and constitutional provisions which characterize the entity, and the holdings of state courts on the question." *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 265 (4th Cir. 2005).

The cited cases offer some support in that Virginia courts routinely confer sovereign immunity on Chesapeake Hospital Authority. *See e.g.*, *Holdstein v. Chesapeake Hosp. Auth. et al.*, No. CL 13-1016 (Va. Beach Cir. Ct. July 18, 2014). However, these cases analyze specifically whether Chesapeake Hospital Authority "is a municipal corporation," entitled to immunity "from tort liability when performing governmental functions." *DuPuy-German v. Perwaiz*, 109 Va. Cir. 276, 277 (Chesapeake Cir. Ct. Feb. 3, 2022). In fact, the court in *DuPuy-German* specifically noted that it was "[a]ssuming, without deciding that the Hospital Authority is not an arm of the Commonwealth," despite its conferral of immunity as a municipal corporation. *Id.* This distinction

7

is potentially important as whether an entity is an arm of the state is ultimately "a question of federal, not state, law," and under federal law municipalities are not arms of the state entitled to Eleventh Amendment immunity. *Md. Stadium Auth.*, 407 F.3d at 265. Chesapeake Hospital Authority fails to address this nuance.

Lastly, Chesapeake Hospital Authority cites a number of cases where this Court and others have found that Virginia entities are arms of the state and thus entitled to Eleventh Amendment immunity. Mem. Supp. at 8–9; Reply at 6. In doing so, Chesapeake Hospital Authority presumably hopes to analogize between itself and state entities like George Mason University, Virginia Polytechnic Institute and State University, and the Department of Child Support Enforcement. Mem. Supp. at 8. However, the arm of the state inquiry is necessarily an individualized one wherein the Court evaluates "four non-exclusive factors." *Oberg*, 804 F.3d at 650–51. Chesapeake Hospital Authority of course differs in some measure from the state entities at issue in other cases and fails to articulate why it qualifies as an arm of the state after an individualized inquiry.

The Court reiterates that Chesapeake Hospital Authority bears the burden of demonstrating that it is entitled to Eleventh Amendment immunity. *Hutto*, 773 F.3d at 545 ("We therefore conclude that sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating."). With no explicit reference to the required *Ram Ditta* factors and no in-depth inquiry into its specific characteristics, Chesapeake Hospital Authority has failed to meet that burden here. *See Clowdis v. Silverman*, No. 3:15-cv-128, 2019 WL 1415454, at *12–13 (E.D. Va. Mar. 28, 2019) (finding that certain defendants failed to satisfy their burden to establish Eleventh Amendment immunity based on failure to cite or analyze certain relevant factors and case law).

As Chesapeake Hospital Authority has failed to establish that it is an arm of the state and thus entitled to Eleventh Amendment immunity, the Court will proceed to a Rule 12(b)(6) analysis of Chesapeake Hospital Authority's failure to state a claim argument.

**C. Procedural Due Process**

Chesapeake Hospital Authority also argues that Hardy fails to state a procedural due process claim. Mem. Supp. at 12–15. To plausibly allege a procedural due process claim, Hardy must claim that: (1) he had a cognizable life, liberty, or property interest; (2) some form of state action caused the deprivation of that interest; and (3) "the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (citation omitted). Chesapeake Hospital Authority contests only the third element—arguing that Hardy has failed to allege that the procedures employed by Chesapeake Hospital Authority were inadequate.[3] The Court agrees.

When considering a procedural due process claim, "[t]he amount of process due depends on the nature of the interests at stake." *Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370, at *2 (4th Cir. 2023) (citation omitted). "In the case of a withdrawal or denial of hospital privileges, procedural due process entitles a physician to a full, evidentiary administrative hearing, before such privileges may be permanently or finally terminated." *Duffield v. Charleston Area Med. Ctr., Inc.*, 503 F.2d 512, 515 (4th Cir. 1974), *abrogated on other grounds by Modaber v. Culpeper Mem'l Hosp.*, 674 F.2d 1023 (4th Cir. 1982). Here, Hardy does not dispute that he "received notice of the charges, an explanation of the evidence against [him], and an opportunity to be heard." Resp.

---

[3] For the purposes of this Motion, the Court assumes, without deciding, that Hardy had a protected property or liberty interest in his medical staff privileges. *See Loxley v. Chesapeake Hosp. Auth.*, 155 F.3d 333 (Table) (4th Cir. 1998).

9

at 6. Rather, he claims that his first hearing before the Ad Hoc Committee panel was biased. Compl. ¶¶ 11–14.

Due process of course requires that Hardy was afforded "[a]n impartial decision maker." *Bowens v. N.C. Dep't of Human Res.*, 710 F.2d 1015, 1020 (4th Cir. 1983) (citation omitted). However, to demonstrate a panel member's impartiality, Hardy must allege personal bias stemming "from a source other than knowledge a decision maker acquires from participating in a case." *Id.* Here, Hardy alleges in a conclusory manner that the Ad Hoc Committee panel members "were inherently biased based on their employment and financial relationship" with Chesapeake Hospital Authority. Compl. ¶ 12. Hardy offers no details regarding the alleged bias or specific allegations that any member "conducted [themselves] in a biased or impartial manner at the hearing." *Bowens*, 710 F.2d at 1020. Hardy's allegation of bias stemming solely from the members' "employment and financial relationship" is insufficient in this context. Compl. ¶ 12. Review panels like the Ad Hoc Committee almost necessarily are composed of individuals who are employed by the complained-of entity. *See e.g.*, *The Citadel*, 2023 WL 3944370, at *1 (complaint heard by the school's "Commandant's Board"); *Moore v. Williamsburg Regional Hosp.*, 560 F.3d 166, 169–70 (4th Cir. 2009) (hospital privileges revoked by the Hospital's Medical Executive Committee). To hold that such broad allegations of financial bias based on employment convert individuals into biased decision-makers for due process purposes would be to essentially negate the possibility of internal review. Further, Hardy's allegations lack specificity or support. The Court finds that Hardy has not plausibly alleged any personal bias sufficient to have deprived him of an impartial decision maker.

Additionally, Hardy alleges that the panel "was inconsistent with [Chesapeake Hospital Authority's] prior panels under similar circumstances," which included a member practicing in the

10

discipline of the petitioner and that the panel was unfair as it "rejected Hardy's recommendation of a panel member." *Id.* ¶¶ 13–14. Allegations of violations of an entity's own policies can bolster due process claims where the policies "embody fundamental guarantees grounded in the due process clause." *Jones v. Bd. of Governors of Univ. of N.C.*, 704 F.2d 713, 717 (4th Cir. 1983). However, here, Hardy has not alleged that the panel's composition was inconsistent with Chesapeake Hospital Authority's Bylaws, just inconsistent with "similar circumstances." Compl. ¶¶ 13–14. Even so, "the due process clause, not [Chesapeake Hospital Authority's] regulations, defines what process is constitutionally mandated." *Bowens*, 710 F.2d at 1019. Hardy points to no case in which such allegations give rise to a due process violation, and the Court is unaware of any. *See Everhart v. Jefferson Parish Hosp. Dist. No. 2*, 757 F.2d 1567, 1571 (5th Cir. 1985) (rejecting a due process claim where the complaint pointed "to several technical violations of the medical staff by-laws," which "even taken together" did not "rise to the level of a constitutional deprivation of procedural due process"). In short, the allegations are insufficient to raise a due process violation.

Further, even if Hardy adequately alleged bias of the Ad Hoc Committee, he fails to similarly allege bias by the Governing Board. As noted above, Hardy's claim focuses on the composition of the initial Ad Hoc Committee panel. But following the decision of the Ad Hoc Committee panel, Hardy also alleges that Chesapeake Hospital Authority's "Governing Board upheld the Ad Hoc Committee's decision." Compl. ¶ 18. Hardy does not allege that the Governing Board was infected with bias or otherwise constitutionally deficient. In fact, the Complaint fails to identify any defects in the Governing Board's decision making. In such circumstances, "it would require an unwarranted inference to find that [Hardy] faced an impartial tribunal not once but twice." *Doe v. The Citadel*, No. 2:21-cv-4198, 2022 WL 2806473, at *6 (D. S.C. July 18, 2022),

11

*aff'd* 2023 WL 3944370. For the reasons stated above, Hardy's allegations are conclusory and fail to plausibly allege that Hardy was deprived of the process to which he was due.

### D. Hardy's Request to Amend

Hardy in response also requests leave to amend his Complaint. Resp. at 9. Generally, leave to amend should be granted upon request "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, where a plaintiff "fails to formally move to amend and fails to provide [the court] with any proposed amended complaint or other indication of the amendments," the Court may decline to give "a blank authorization to 'do over' the complaint." *Estrella v. Wells Fargo Bank, N.A.*, 497 Fed. App'x 361, 362 (4th Cir. 2012) (citation omitted) (cleaned up). Here, Hardy has offered no guidance to the Court regarding his proposed amendments. Additionally, Hardy's sole allegations of bias reference financial bias purely by nature of one's employment with Chesapeake Hospital Authority. Compl. ¶ 12. As the Court noted above, it is not inclined to credit any argument that the act of being employed by a defendant inherently taints a decision maker as impartial or biased for due process purposes. Given this context, the Court will deny Hardy's request.

### IV.   CONCLUSION

For the reasons stated above, Hardy's claim against Chesapeake Hospital Authority fails to state a claim under § 1983. Accordingly, Chesapeake Hospital Authority's Motion to Dismiss, ECF No. 7, is GRANTED and this matter is DISMISSED with prejudice. Hardy's request for leave to amend his Complaint is DENIED. The Clerk is DIRECTED to send an electronic copy of this Order to all counsel of record.

It is SO ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Date: March 13, 2025